UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| DUSTIN BRENNER,<br><br>Plaintiff,<br><br>v.<br><br>JOHN GALIPEAU, et al.,<br><br>Defendants. | CAUSE NO. 3:21-CV-662-RLM-MGG |

OPINION AND ORDER

Dustin Brenner, a prisoner without a lawyer, filed a complaint. The court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A. The court applies the same standard as when deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Lagerstrom v. Kingston, 463 F.3d 621, 624 (7th Cir. 2006). A complaint must state a claim for relief that is plausible on its face, meaning that it "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."Bissessur v. Indiana Univ. Bd. of Trs., 581 F.3d 599, 602 (7th Cir. 2009) (internal quotation marks and citation omitted). "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c). When the plaintiff references and relies on it, "the contents of that document become part of the complaint and may be considered as such when the court [determines] the sufficiency of the complaint."

Williamson v. Curran, 714 F.3d 432, 436 (7th Cir. 2013) (citations omitted). "A document filed pro se is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted).

On or about April 28th or 29th, 2020, there was a riot at the Westville Correctional Facility during which an officer was injured, so Warden Galipeau transferred all offenders residing in the dorm where the riot occurred to segregation at the Westville Control Unit. Mr. Brenner alleges he was initially placed in a fifteen-by-fifteen-foot recreation area with eight other offenders. The prisoners were forced to sleep on the floor, and they were only allowed to leave the area twice during a twenty-four-hour period. The room contained no sink or toilet, although inmates were allowed to use a nearby toilet during shift changes twice-a-day. Inmates that urinated in the drain were denied food. Mr. Brenner alleges that Officer Morales and Officer Cartagena sometimes squeezed and touched the food before piling it onto one tray for all the prisoners to share. Mr. Brenner alleges he wasn't given soap, towels, or toilet paper, and he wasn't allowed to shower while housed in the recreation area. [1]

---

[1] In an earlier section of the complaint entitled "Nature of Claim," Mr. Brenner specifically alleges Officer Vega deprived him of showers and "the means of maintaining personal hygiene including soap, water, towels, toilet paper, a toothbrush and new clothing" for a period of "just over 10 (ten) days." ECF 1 at 4. It's unclear when this happened or where Mr. Brenner was during that time, the court will assume that at least part of that treatment occurred while he was housed in the recreation area.

After about four days,[2] Warden Galipeau and Captain Lewis moved the inmates to "single man cells with two or three of us jammed together in one cell." ECF 1 at 6. Mr. Brenner doesn't give any more details about the specific conditions of his cell other than to say he staged a hunger strike during this time, for which Officer Cartagena was removed from the range for "messing with our food trays." *Id.*

Mr. Brenner generally claims that the building the offenders were placed in after the riot was an "ancient, disused building" that was "hurriedly renovated and had lots of vermin, spiders, non-working toilets and abusive staff." *Id.* at 7. He says he spent 49 days in the "hell hole cooked up by Warden Galipeau and Captain Lewis." *Id.*

Mr. Brenner alleges that officials never interviewed him about the riot. However, he received a conduct report for flooding a cell to which he was never assigned and a Disciplinary Hearing Board convicted him of that offense.

After almost 100 days in segregation,[3] Mr. Brenner was called into Warden Galipeau's office, was told that an investigation had concluded, and that it hadn't been proven Mr. Brenner played any part in the riot. He was returned to the general population. He sues Warden Galipeau, Captain Lewis, Officer Morales, Officer Cartagena, and Officer Vega for compensatory and punitive damages.

---

[2] Mr. Brenner says he was subjected to the conditions in the recreation area for "almost four days," before being transferred to an actual cell. ECF 1 at 5–6.

[3] It appears that Mr. Brenner must have spent 49 nine days of his segregation in the "ancient, disused" building and the rest somewhere else.

Mr. Brenner begins by claiming his that his placement in segregation violated his Fourteenth Amendment due process rights. The Fourteenth Amendment provides state officials shall not "deprive any person of life, liberty, or property, without due process of law . . .." U.S. Const. amend. XIV, § 1. That said, due process is only required when punishment extends the duration of confinement or imposes "an atypical and significant hardship on him in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). "[I]nmates have no liberty interest in avoiding transfer to discretionary segregation—that is, segregation imposed for administrative, protective, or investigative purposes." Townsend v. Fuchs, 522 F.3d 765, 771 (7th Cir. 2008) (citing Lekas v. Briley, 405 F.3d 602, 608–609 & 608 n.4 (7th Cir. 2005) ("[R]eassignment from the general population to discretionary segregation does not constitute a deprivation of a liberty interest.")); *see also* DeTomaso v. McGinnis, 970 F.2d 211, 212 (7th Cir. 1992) ("[P]risoners possess neither liberty nor property in their classifications and prison assignments."); Healy v. Wisconsin, 65 Fed. Appx. 567, 568 (7th Cir. 2003) ("[I]nmates do not have a protected liberty interest in a particular security classification.") (citing Sandin v. Connor, 515 U.S. at 486).

Although later cases have questioned the conclusion that placement in nonpunitive segregation can "never implicate a liberty interest," *see* Williams v. Brown, 849 Fed. Appx. 154, 157, n.3 (7th Cir. 2021), timing plays a part in the analysis, even when conditions are significantly harsher. *See e.g.* Earl v. Racine County Jail, 718 F.3d 689, 691 (7th Cir. 2013) (five days is generally "too short a time

to trigger due-process protection"); Marion v. Columbia Correction Inst., 559 F.3d 693, 697-698 & nn.2–3 (7th Cir. 2009) (collecting cases that held segregation of two to 90 days doesn't trigger due process concerns and stating, "In a number of other cases, we have explained that a liberty interest may arise if the length of segregated confinement is substantial *and* the record reveals that the conditions of confinement are unusually harsh.") (emphasis added); Lekas v. Briley, 405 F.3d at 612 (finding that up to ninety days in segregation does not affect liberty); *see also* Wilkinson v. Austin, 545 U.S. 209, 224 (2005) (recognizing "duration" is a component that plays a part in determining whether a liberty interest exists).

Mr. Brenner says he spent four days in a 15x15-foot recreation area with eight other inmates before being moved to a cell. He slept on the floor and wasn't given hygiene materials or allowed to shower during that time.[4] These conditions were significantly harsher than his pre-riot living quarters, but the face of the complaint makes it clear the placement in the recreation area was a temporary administrative measure related to the aftermath of the riots that was quickly resolved. Thus, Mr. Brenner hasn't stated a Fourteenth Amendment claim on these grounds. *See e.g.* Earl v. Racine County Jail, 718 F.3d at 691 (7th Cir. 2013).

Mr. Brenner also claims his due process rights were violated after he was transferred out of the recreation area and into a cell, where he remained in segregation for less than 100 days. Not only is the length of his period in segregation

---

[4] As discussed in footnote 1, Mr. Brenner alleges Officer Vega deprived him the means of maintaining personal hygiene for ten days, but the timing and location of those deprivations are unclear. Even assuming this type of deprivation occurred for ten days rather than four, the court's analysis remains the same.

5

relatively insubstantial in light of relevant case law, *see e.g.* Marion v. Columbia Correctional, 559 F.3d at 697-98 & nn.2–3, but, more importantly, Mr. Brenner hasn't plausibly alleged the conditions of segregation during this time were an atypical and significant hardship on him. Sandin v. Connor, 515 U.S. at 484. He alleges two or three men were in a single-man cell during the transfer, but he doesn't say how many men were in his specific cell or provide any details as to sleeping arrangements or otherwise. *See* French v. Owens, 777 F.2d 1250, 1252 (7th Cir. 1985) ("[T]he mere practice of double celling is not *per se* unconstitutional."); *cf.* McCree v. Sherrod, 408 F. App'x 990, 992–993 (7th Cir. 2011) (concluding that triple-celling does not automatically violate the Constitution). He also vaguely alleges the building in general was ancient, hurriedly renovated, and had vermin, spiders, and non-working toilets, but he doesn't tie any of those allegations to his own personal experiences or provide details as to his specific cell(s). *See* Townsend v. Fuchs, 522 F.3d at 772 (finding inmate's contentions about his temporary, 59-day placement in administrative segregation in a double-bunked, wet, dirty cell with limited human contact did not create due process concerns); *see also* Smith v. Dart, 803 F.3d 304, 312 (7th Cir. 2015) (inmate failed to state a claim when he alleged the jail was infested with mice and cockroaches but did not provide sufficient details which "left [the court] in the dark as to how extensive the infestations are and how the pests affect him"). Mr. Brenner hasn't stated a Fourteenth Amendment due process claims upon which relief can be granted.

6

Even if an inmate's placement in segregation doesn't trigger any due process concerns, he might still have a claim about the conditions of his confinement under the Eighth Amendment.[5] "Although the Constitution does not mandate comfortable prisons, it does mandate humane ones." Thomas v. Blackard, 2 F.4th 716, 719 (7th Cir. 2021) (internal quotation marks and citation omitted). Courts conduct both an objective and a subjective inquiry in evaluating an Eighth Amendment claim. Farmer v. Brennan, 511 U.S. 825, 834 (1994). The objective prong asks whether the alleged deprivation is "sufficiently serious" that the action or inaction of a prison official leads to "the denial of the minimal civilized measure of life's necessities." *Id*. (citations omitted). The Eighth Amendment requires inmates to be provided with "humane conditions of confinement" and "ensure that inmates receive adequate food, clothing, shelter, and medical care." Thomas v. Blackard, 2 F.4th at 719 (quoting Farmer v. Brennan, 511 U.S. at 832). They must also be provided with "'reasonably adequate ventilation, sanitation, bedding, hygienic materials, and utilities.'" Hardeman v. Curran, 933 F.3d 816, 820 (7th Cir. 2019) (quoting Gray v. Hardy, 826 F.3d 1000, 1005 (7th Cir. 2016)). "Some conditions of confinement may establish an Eighth Amendment violation in combination when each alone would not do so." Gillis v. Litscher, 468 F.3d 488, 493 (7th Cir. 2006). On the subjective prong, the prisoner must allege that the defendant acted with deliberate indifference to his health or safety. Farmer v. Brennan, 511 U.S. at 834. To satisfy this standard, "the official

---

[5] *See* Townsend v. Fuchs, 522 F.3d at 772-773 ("The issue of cell conditions in TLU is best analyzed as a claim brought under the Eighth Amendment.").

7

must have actually known of and consciously disregarded a substantial risk of harm." Rasho v. Jeffreys, 22 F.4th 703, 710 (7th Cir. 2022).

Mr. Brenner says he was confined to a 15x15-foot area with eight other inmates for four days. This equates to just over 28 square feet per person. There is no per se footage requirement in terms of what is considered cruel and unusual punishment. *See e.g.* McCree v. Sherrod, 408 F. App'x at 992–993 (neither 35 feet per person nor triple-celling amount to a per se violation) (citing Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). However, the small space coupled with the lack of toilet, sink, soap, showers, towels, and toilet paper as alleged by Mr. Brenner are enough to plausibly suggest he was denied the minimal civilized measure of life's necessities while housed with eight other inmates in the recreation area. And giving Mr. Brenner the benefit of the inferences to which he is entitled at the screening stage, it can be inferred that the defendants acted with deliberate indifference to his needs during that period.[6] He has stated Eighth Amendment claims against them.

That said, Mr. Brenner's claims about the rest of his stay in segregation fall short of stating a claim on which relief can be granted.[7] He alleges the inmates were moved from the recreation area to single cells with "two or three of us jammed

---

[6] Mr. Brenner alleges that Officer Vega deprived him of the means of "maintaining personal hygiene" (ECF 1 at 4), Warden Galipeau and Captain Lewis knowingly "chose" to place Mr. Brenner in the deficient recreation area (*id.* at 5), and Officer Morales and Officer Cartagena were aware of the conditions because they "could be seen though the recreation room" tampering with the inmates' food before "placing it inside the room for nine hungry men to sort out" (*id.*).

[7] The timing of events is unclear. Mr. Brenner first alleges he was housed in segregation for "almost 100 days." ECF 1 at 6. He later says he "spent 49 days in this hell hole cooked up by Warden Galipeau and Captain Lewis." *Id.* at 7.

together in one cell" (ECF 1 at 6), but he doesn't say whether he, personally, was housed with one or two other inmates. *See e.g.* McCree v. Sherrod, 408 F. App'x at 992–993. He also alleges the building in general was ancient, unsanitary, hurriedly renovated, and had vermin, spiders, and non-working toilets. As already noted, he doesn't tie any of those allegations to his own personal experiences or provide details as to his specific cell(s). *See* Smith v. Dart, 803 F.3d at 312; *see also* Bissessur v. Indiana Univ. Trustees, 581 F.3d at 602 (claim must be plausible on its face and complaint must provide adequate factual content). These claims will be dismissed as impermissibly vague.

Mr. Brenner also alleges Warden Galipeau and Captain Lewis should be held liable for implementing polices that led to the violation of his rights and for failing to properly train the officers, but he hasn't identified any specific policy that led to the alleged violations of his rights.[8] More importantly, with regard to the failure to train allegation, "in the Eighth Amendment context, such claims may only be maintained against a municipality." Brown v. Budz, 398 F.3d 904, 918 (7th Cir. 2005) (quoting Sanville v. McCaughtry, 266 F.3d 724, 739–740 (7th Cir. 2001)). Neither Warden Galipeau nor Captain Lewis are municipalities in either their individual or official capacities, so the claims against Warden Galipeau and Captain Lewis must also be dismissed.

---

[8] He just says there was an "ongoing custom/practice/policy whereby they do not properly train or discipline their corrections officers at [WCF] in how to properly treat prisoners assigned to WCU segregation." ECF 1 at 4. Other than describing his claims related to the post-riot placement, Mr. Brenner doesn't allege any other instances of this failure to train. These conclusory allegations are inadequate to state a claim on which relief can be granted.

9

Finally, Mr. Brenner might be trying to assert a retaliation claim. "To establish a prima facie case of unlawful retaliation, a plaintiff must show (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." Douglas v. Reeves, 964 F.3d 643, 646 (7th Cir. 2020) (internal quotation marks and citation omitted).

Mr. Brenner alleges he was falsely accused, and convicted by the disciplinary hearing board, of flooding a cell,[9] but he doesn't plausibly allege he engaged in an activity protected by the First Amendment before that write-up. In fact, he specifically says he was "never interviewed by staff/defendants to even discuss what happened at 7 dorm," so it's not plausible that any of Mr. Brenner's complaints about his placement and/or conditions were a motivating factor in the decision to reprimand him. He hasn't stated a First Amendment retaliation claim on which relief can be granted.[10]

For these reasons, the court:

---

[9] Mr. Brenner can't challenge the consequences of that conviction in this civil rights lawsuit. See Heck v. Humphrey, 512 U.S. 477, 481 (1994) ("[H]abeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement . . ..").

[10] Mr. Brenner attaches a conduct report about the flooding incident to the complaint, which indicates it was reported/written by Sergeant Trevor Spiegel and signed by his immediate supervisor Lieutenant Lester Jones. ECF 1-1 at 2. Neither are named as defendants, and Mr. Brenner doesn't allege any of the named defendants played a part in the conduct report or disciplinary proceedings. See Burks v. Raemisch, 555 F.3d 592, 594 (7th Cir. 2009) ("[P]ublic employees are responsible for their own misdeeds but not for anyone else's."); see also George v. Smith, 507 F.3d 605, 609 (7th Cir. 2007) ("Only persons who cause or participate in the violations are responsible.").

(1) GRANTS Dustin Brenner leave to proceed against Warden John Galipeau, Captain Lewis, Officer Morales, Officer Cartagena, and Officer Vega in their individual capacities for compensatory and punitive damages for housing him in inhumane conditions in a fifteen-by-fifteen-foot recreation area along with eight other inmates for a period of four days following the riots on April 28th or 29th, 2020, in violation of the Eighth Amendment;

(2) DISMISSES all other claims;

(3) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to serve process on) Warden John Galipeau, Captain Lewis, Officer Morales, Officer Cartagena, and Officer Vega at the Indiana Department of Correction, with a copy of this order and the complaint (ECF 1);

(4) ORDERS the Indiana Department of Correction to provide the full name, date of birth, and last known home address of any defendant who does not waive service if it has such information; and

(5) ORDERS, under 42 U.S.C. § 1997e(g)(2), Warden John Galipeau, Captain Lewis, Officer Morales, Officer Cartagena, and Officer Vega to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on June 6, 2022

s/ Robert L. Miller, Jr.
JUDGE
UNITED STATES DISTRICT COURT